# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JOHN L. "JAY" GILMORE,              ) | |
|                                                              ) | |
|         Plaintiff,                                     ) | |
|                                                              ) | Case No. _____ |
| v.                                                         ) | |
|                                                              ) | |
| 1. THE UNIVERSITY OF OKLAHOMA,  ) | |
|                                                              ) | |
|         Defendant.                                  ) | |

## COMPLAINT

**COMES NOW** John L. "Jay" Gilmore, Plaintiff in the above-entitled action, by and through his attorneys, David R. Keesling and Timothy S. Kittle, of the law firm, SOLOMON | ARIEH, and for his causes of action alleges as follows:

### JURISDICTION /VENUE /PARTIES

1. Jurisdiction in this matter is based upon the existence of a federal question under 28 U.S.C. § 1331, pursuant to claims arising under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; well as 28 U.S.C. § 1343(a)(4), which provides that "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights."

2. Venue is appropriate as all incidents alleged herein occurred within the Western District of Oklahoma.

3. Plaintiff John L. "Jay" Gilmore, was and is a citizen of the State of Tennessee.

4. Defendant University of Oklahoma ("OU"), at all times relevant to the claims alleged herein, upon information and belief, was and is an educational institution – a university – created and administered by the State of Oklahoma for the purpose of providing post-secondary education to individuals who are enrolled with the entity.

5. Defendant OU, at all times relevant to the claims alleged herein, upon information and belief, was and is an employer affecting commerce which employed fifteen or more employees for each working day during the time period in which Plaintiff was employed by Defendant. *See* 42 U.S.C. § 2000e(b).

6. Due to the foregoing, this Court has jurisdiction over the parties and subject matter.

## PLAINTIFF'S STATEMENT OF THE FACTS

7. Plaintiff Jay Gilmore incorporates paragraphs 1 through 6 herein as if fully set forth verbatim.

8. At all times relevant to the claims alleged herein, Plaintiff was an employee covered by Title VII. *See* 42 U.S.C. § 2000e(f).

9. At all times relevant to the claims alleged herein, Plaintiff was a member of a statutorily recognized protected class, a male by biology and birth.

10. At all times relevant to the claims alleged herein, Plaintiff was a member of a statutorily recognized protected class, an American of African descent, and who has the physical attributes of an African American.

11. Plaintiff began his employment with Defendant OU on or about August 16, 2023.

12. Plaintiff was the first black male hired to be an instructor /professor for the Journalism Department within Gaylord College at OU; this was the subject of a story on News KWTV in Oklahoma City.

13. Preceding Plaintiff's employment with OU, Plaintiff had substantial experience as a broadcast journalist in Laredo, Texas; Huntsville, Alabama; West Palm Beach, Florida; and Atlanta, Georgia.

14. Plaintiff's broadcasting career was subsequently followed by successful stints as a teacher of Broadcast Journalism at the collegiate level at Middle Tennessee State University, West Virginia University, the University of Memphis, and Belmont University.

15. Additionally, during Plaintiff's tenure at OU, he produced broadcast shows for OU Athletics and anchored sports broadcasts on KOCO Channel 5.

16. Plaintiff was also invited to sit on a panel in Las Vegas, where he was given a national award for sports content he produced at OU.

17. Notwithstanding the foregoing, OU's decision to hire Plaintiff did not resonate well with several white female employees at Gaylord; among those were Kelsey Martyn-Farewell (Director of Finance and Administration), Jensen Moore (tenure track Associate Professor), Kathy Sawyer (Director of Student Services) and Barbara Merckx (News Director at OU).

18. Throughout his employment with Defendant OU, Plaintiff was treated dismissively and less favorably by his white female colleagues.

19. Prior to Plaintiff's arrival on the OU campus, the substance of his compensation was transmitted to his soon-to-be colleagues in Gaylord by Kelsey Martyn-Farewell.

20. Further, it was communicated to Plaintiff by a colleague within the Gaylord circle that his white female colleagues asserted that Plaintiff was hired to his position simply because he is black and male.

21. Specifically, Martyn-Farewell asserted that OU /Gaylord simply "wanted the first black man they could find and the college didn't have the funds to pay him or the classes for him to teach."

22. On or about April 2024, Andrea Miller, a white female, was hired to the position of Dean of Gaylord College of Journalism and Mass Communication, replacing David Craig, who served as Interim Dean during the 2023-24 school year.

23. On or about September 2024, it was announced that Plaintiff had been selected to represent Gaylord College in Arezzo, Italy.

24. This selection was opposed by one or more of Plaintiff's white female colleagues.

25. On or about November 2024, a white, female, tenure-track colleague of Plaintiff's, Jensen Moore, filed a salacious and demonstrably false Title IX complaint against Plaintiff, which contained accusations that more appropriately described conduct in which Moore engaged and directed at Plaintiff.

26. Pursuant to the filing of that complaint, on or about December 2024, Defendant OU, by and through Dean Andrea Miller, placed Plaintiff on administrative

leave, stripping Plaintiff of all of his job duties, thereby negatively affecting the terms and conditions of Plaintiff's employment.

27. On or about January 2025, Plaintiff met with the Title IX investigator to present his version of events pertaining to Moore's complaint.

28. Additionally, because of the unlawful and discriminatory manner in which he was treated, and seeing that it was not going to cease, Plaintiff submitted a letter of resignation, to be effective on July 8, 2025, in which he detailed the harassment to which he had been subjected – which included the involvement of Dean Andrea Miller – as well as directly rebutting all of the created-from-whole-cloth allegations that led to the Title IX investigation.

29. Plaintiff provided a 20-page Power Point presentation to the Title IX investigation, demonstrating that not only did Plaintiff *not* sexually harass Moore, but it was Moore, in fact, who sent communications to Plaintiff that could be construed as sexual harassment.

30. As a result, on or about February 10, 2025, the Title IX claim filed by Jensen Moore against Plaintiff was denied, *i.e.*, it was found that Plaintiff did not commit any violations constituting sexual harassment or a policy violation.

31. Nonetheless, Defendant OU refused to reinstate Plaintiff to his teaching duties, effectively leaving Plaintiff on suspension from engaging in the activities attendant to his position as an instructor, further diminishing Plaintiff's status in his profession.

32. Additionally, Plaintiff was scrubbed from the OU website, upon which Plaintiff's information and photograph were on display, informing the public of his position

as an instructor at the Gaylord School of Journalism, again diminishing Plaintiff's reputation and standing in his profession.

33. Moreover, on February 16, 2025, Jensen Moore posted an article on the internet pertaining to the Title IX investigation that cast Plaintiff in a false and damaging manner. *See* Jensen Moore, Ph.D. in Strategic Communication, "My experience with a university Title IX claim for sexual harassment," https://prmojo.wordpress.com/author/jensenmoore/ (last visited Sept. 12, 2025).

34. Upon information and belief, dissimilar to Plaintiff, Jensen Moore remains employed at the Gaylord School of Journalism as an Associate Professor without any restrictions on the performance of her duties attendant to the position.

35. In contrast, subsequent to the matters alleged herein, Plaintiff has been rejected by a number of prominent universities – after being interviewed – because of the publication of debunked allegations emanating from a Title IX investigation under which no violations on the part of Plaintiff were identified. [1]

36. Regarding Paragraph 35 above, subsequent to an interview for a professorship position, Plaintiff was informed to expect a job offer by the week following

---

[1] In addition to the Jensen Moore article, on April 24, 2025, an article was posted on the website of the OU Daily, the University's student newspaper, which described not only the Title IX matter initiated by Jensen Moore, it alleged the existence of two other complaints which, similar to the Jensen Moore matter, were deemed insufficient to demonstrate wrongdoing on the part of Plaintiff. *See* Kevin Eagleson, "OU Gaylord instructor resigns, was subject of 3 Title IX reports alleging inappropriate conduct," https://www.oudaily.com/news/ou-gaylord-college-title-ix-allegations-journalism-instructor-jay-gilmore-resigns/article_d6d9546b-e8b0-4e53-9e11-be653ea712fb.html (last visited Oct. 1, 2025).

the interview, and further, Plaintiff's son was offered $70,000.00 in scholarship benefits as the dependent of a new hire; however, the position was never offered to Plaintiff.

37. As a consequence, at the time this action is being filed, in order to generate income, Plaintiff has been forced to take a much less prestigious and substantially less compensated high school teaching position in which he has been confronted with the OU allegations that have been published on the internet.

38. The actions taken by Defendant OU, as delineated herein, were motivated by animus against Plaintiff based on his sex, male, and his race, black /African American.

39. On or about June 13, 2025, Plaintiff, by and through counsel, filed a Charge of Discrimination with the Oklahoma City Area Office of the Equal Employment Opportunity Commission ("EEOC") pertaining to the matters alleged herein.

40. On or about July 21, 2025, the EEOC issued a Dismissal and Notice of Rights, *i.e.*, a "Right to Sue Letter."

41. This matter is filed within ninety (90) days of the receipt of the Right to Sue Letter and is therefore timely filed.

**CAUSE OF ACTION NO. 1**
**UNLAWFUL DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. §§ 2000e *ET SEQ*.**

42. Plaintiff Jay Gilmore incorporates paragraphs 1 through 41 herein as if fully set forth verbatim.

43. Plaintiff was an employee of Defendant OU.

44. Plaintiff was and is an individual who is a member of two statutorily protected classes, *i.e.*, a male and an American of African descent and appearance.

45. During the course of his employment, Plaintiff was treated dissimilarly and less favorably than similarly situated white female employees.

46. Plaintiff was subjected to an adverse employment action, *i.e.*, a suspension of the duties attendant to his position on an indefinite basis.

47. Due to the discriminatory treatment to which he was subjected, coupled with the involuntary diminishment of his position through the imposition of a meritless suspension of his position's tasks and the elimination of his profile from the OU Gaylord website, Plaintiff was subjected to an adverse employment action, *i.e.*, a constructive discharge, in that no reasonable, similarly-situated employee would choose to remain employed under the herein described circumstances.

48. The unlawful discrimination directed at Plaintiff by his colleagues and administrative personnel was effected because of Plaintiff's race and sex.

49. As a result of the unlawful discrimination, as set forth herein, Plaintiff's rights were violated, causing him injury.

50. Consequently, Plaintiff Jay Gilmore is entitled to damages and other relief as set forth herein.

### CAUSE OF ACTION NO. 2
### UNLAWFUL DISCRIMINATION
### 42 U.S.C. § 1981

51. Plaintiff Jay Gilmore incorporates paragraphs 1 through 41 herein as if fully set forth verbatim.

52. Plaintiff was an employee of Defendant OU.

53. Plaintiff was and is an individual who is a member of a statutorily protected class, *i.e.*, an American of African descent and appearance.

54. During the course of his employment, Plaintiff was treated dissimilarly and less favorably than similarly situated white female employees.

55. Plaintiff was subjected to an adverse employment action, *i.e.*, a suspension of the duties attendant to his position on an indefinite basis.

56. Due to the discriminatory treatment to which he was subjected, coupled with the involuntary diminishment of his position through the imposition of a meritless suspension of his position's tasks and the elimination of his profile from the OU Gaylord website, Plaintiff was subjected to an adverse employment action, *i.e.*, a constructive discharge, in that no reasonable, similarly-situated employee would choose to remain employed under the herein described circumstances.

57. The unlawful discrimination directed at Plaintiff by his colleagues and administrative personnel was effected because of Plaintiff's race.

58. As a result of the unlawful discrimination, as set forth herein, Plaintiff's rights were violated, causing him injury.

59. Consequently, Plaintiff Jay Gilmore is entitled to damages and other relief as set forth herein.

## EXEMPLARY AND PUNITIVE DAMAGES

60. Plaintiff Jay Gilmore incorporates paragraphs 1 through 59 herein as if fully set forth verbatim.

61. The acts and omissions by Defendant, as set forth in the preceding paragraphs, demonstrate that Defendant was engaged in conduct evincing malice or reckless indifference to Plaintiff's rights.

62. As a direct result of Defendant's malice and /or reckless disregard for Plaintiff Jay Gilmore's rights, Plaintiff is entitled to exemplary and punitive damages, *subject to applicable law*, in an amount to be determined by a jury commensurate with the financial resources available to Defendant and sufficient to deter others similarly situated from like behavior.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Jay Gilmore prays this Court will grant the following:

A. Award Plaintiff all actual damages, economic and non-economic, including those emanating from physical pain, mental anguish and emotional distress, in an amount exceeding seventy-five thousand dollars ($75,000.00);

B. Award Plaintiff punitive damages to the extent permitted by law;

C. Award Plaintiff his reasonable costs and attorney's fees;

D. Award any and all further relief this Court deems just and equitable.

Respectfully submitted,

**SOLOMON | ARIEH**

/s/ David R. Keesling
David R. Keesling, OBA No. 17881
Timothy S. Kittle, OBA No. 21979
401 South Boston Avenue, Suite 2300
Tulsa, Oklahoma 74103
(918) 631-7770 – Telephone

dkeesling@solomon-arieh.com
tkittle@solomon-arieh.com
***Attorneys for Plaintiff:***
***John L. "Jay" Gilmore***