## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN L. "JAY" GILMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-CV-1210-HE |
| | ) | |
| THE UNIVERSITY OF OKLAHOMA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant, the State of Oklahoma, ex rel., the Board of Regents of the University of Oklahoma ("University"), respectfully requests this Court dismiss Plaintiff's Complaint [Doc. 1] pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). In support of its Motion, Defendant states as follows:

## INTRODUCTION

Plaintiff was hired as an instructor[1] in the Journalism Department within the University's Gaylord College in August 2023. [Doc. 1 at ¶¶ 11-12]. Plaintiff alleges that he learned from a colleague that some of the white female employees in the college objected to his hiring, discussed his salary, and asserted that he was hired to his position simply because he was "black and male". [Doc. 1 at ¶¶ 17, 19-20].  He alleges that the college hired Andrea Miller as Dean in April 2024. [Doc. 1 at ¶ 22]. Later in 2024 he was selected

---

[1] According to the University Faculty Appointments Policy, an instructor is a temporary, non-regular appointment that is not tenure-eligible and must be appointed on a yearly basis. https://tinyurl.com/zw9vrncz (last visited January 22, 2026).

to represent Gaylord College in Arezzo, Italy. [Doc. 1 at ¶ 23]. A few months after the announcement, according to Plaintiff, a female colleague filed a Title IX complaint against him. [Doc. 1 at ¶ 25]. This was followed by Plaintiff being placed on administrative leave in December 2024 pending an investigation by the University's Office of Institutional Equity, during which his job duties were suspended. [Doc. 1 at ¶ 26]. In January 2025, Plaintiff submitted a letter of resignation indicating an effective date of July 8, 2025. [Doc. 1 at ¶ 28]. One month later, the Office of Institutional Equity found that Plaintiff was not responsible for Title IX violations. [Doc. 1 at ¶ 30]. He was not reinstated to teaching and ultimately separated from the University in accordance with his resignation letter. [Doc. 1 at ¶ 31].

Plaintiff now brings claims for discrimination under Title VII and 42 U.S.C. § 1981. Plaintiff fails to state a claim under Title VII, and the University has not waived its Eleventh Amendment immunity from the § 1981 claim. Therefore, this Court should dismiss this case.

**ARGUMENTS AND AUTHORITIES**

## I.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include enough factual content, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint may be properly dismissed when it provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555; *see*

2

*also Robbins v. State of Okla., ex rel. Dept of Human Services*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). A court must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to the claimant. However, the court need not accept as true allegations that are conclusory in nature. *Bell Atlantic Corp.,* 550 U.S. at 557; *Erikson v. Pawnee Cnty. Bd of Cnty. Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). A complaint of discrimination need not conclusively establish a prima facie case, but it "must contain more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (quotations omitted).

## II.    PLAINTIFF'S CLAIM UNDER § 1981 MUST BE DISMISSED

Plaintiff brings a claim against the University under 42 U.S.C. § 1981. That claim is barred by the Eleventh Amendment.

Federal courts are courts of limited jurisdiction. Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state." U.S. Const. amend. XI. Although "[t]his language expressly encompasses only suits brought against a State by citizens of another state, ... the Amendment bars suits against a State by citizens of that same State as well.*" Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). This immunity applies "whether the relief sought is legal or equitable." *Papasan*, 478 U.S. at 276; *see also Steadfast Ins. Co. v. Agricultural Ins. Co*.,

507 F.3d 1250, 1252 (10th Cir. 2007) ("Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages.").

Thus, "[t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) "Only a state or 'arms' of a state may assert the Eleventh Amendment as a defense to suit in federal court." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1232 (10th Cir. 1999); *see also Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir. 1992) ("Eleventh Amendment immunity extends to state agencies that act as arms of the state."). Absent waiver, consent to suit, or congressional abrogation of immunity, a suit in which a state is named as a defendant is generally proscribed by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The University is an arm of the State of Oklahoma and is thus entitled to Eleventh Amendment immunity. *Seibert v. State of Okl., ex rel. University of Oklahoma Health Sciences Center*, 867 F.2d 591, 594 (10th Cir. 1989*); McLaughlin v. Board of Regents of University of Oklahoma*, 566 F.Supp.3d 1204, 1211 (W.D. Okla. 2021). The State of Oklahoma has not waived its sovereign immunity or consented to suit for Plaintiff's claims under 42 U.S.C. § 1981. *See* Okla. Stat. tit. 51, § 152.1(B). Furthermore, Congress has not abrogated Oklahoma's Eleventh Amendment immunity to § 1981 lawsuits. *See Ellis v. Univ. of Kan. Medical Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998); *Patillo v. Larned State Hosp.*, 462 Fed.Appx. 780, 783 (10th Cir. 2012); *Lee v. Oklahoma*, No. CIV-13-1254-HE,

2014 WL 3689691 at *1 (W.D. Okla. 2014). Accordingly, Plaintiff's § 1981 claim against the University must be dismissed.

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VII

Plaintiff's claims under Title VII rest upon an administrative leave he was issued, pending a complaint investigation, and on an alleged constructive discharge. To state a claim for discrimination under Title VII, Plaintiff must show: (1) membership in a protected class; (2) an adverse employment action; and (3) that took place under circumstances giving rise to an inference of discrimination. *Hutchinson v. City of Oklahoma City*, 919 F. Supp. 2d 1163, 1170 (W.D. Okla. 2013). For both theories asserted, Plaintiff's claims fail to meet the *Twombly/Iqbal* standard. Plaintiff does not adequately plead that the administrative leave constitutes Title VII discrimination because he fails to establish discriminatory motive. Further, the facts as pled clearly demonstrate that his resignation was not a constructive discharge under Title VII because his allegations do not indicate any intolerable working conditions that compelled him to resign.

### A.    ADMINISTRATIVE LEAVE AS THE BASIS FOR A DISCRIMINATION CLAIM

Plaintiff's case against the University is heavy with conclusory statements and completely bereft of facts that support a claim of Title VII discrimination. He fails to tie the suspension of his duties pursuant to the administrative leave to any discriminatory animus. His own allegation states that the administrative leave was "[p]ursuant to the filing of [a Title IX] complaint" against him, essentially showing that the University had a legitimate, non-discriminatory reason for its actions. *See* [Doc. 1 at ¶ 26]. Not that such a

showing is necessary, considering that there is no allegation that a non-black or female similarly situated employee was allowed to continue their teaching duties during the same type of Title IX investigation. *See Keenan-Coniglio v. Cumbres & Toltec Scenic Operating Comm'n*, 769 F. Supp. 3d 1216, 1236 (D.N.M. 2025); *see also Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021). Plaintiff's allegations that the Title IX complaint against him "contained accusations that more appropriately described conduct in which Moore engaged and directed at Plaintiff" and that Moore "remains employed at the Gaylord School of Journalism . . . without any restrictions on the performance of her duties" do not establish disparate treatment. *See* [Doc. 1 at ¶¶ 25, 34].  He does not allege that he, or anyone else, made a Title IX complaint against Moore; therefore, she was not under any investigation and was not similarly situated to him. *See Throupe*, 988 F.3d at 1255 (without evidence that a similarly situated female employee would be treated differently, the male plaintiff failed to raise any inference of discrimination).

Missing from all the vague references to mistreatment from the white, female colleagues that supposedly did not agree with his hiring or compensation are allegations that Dean Miller, the person he alleges placed him on administrative leave, was motivated by discriminatory animus toward his race or gender. While he alleges that the Title IX complaint was "salacious and demonstrably false," there is no allegation that anyone besides Plaintiff thought so, much less that Dean Miller shared that assessment when she placed him on leave. *See* [Doc. 1 at ¶ 25]. Plaintiff himself even references two other independent investigations, of which he was the subject, that were proceeding at about the

6

same time. *See* [Doc. 1 at ¶ 35, n. 1]. Being under investigation for no less than *three* reports of inappropriate conduct, two of which are not alleged to have any connection with the one filed by his colleague, is certainly a legitimate reason to place him on leave. Plaintiff has failed to show that being placed on administrative leave pending investigation was a Title VII violation.

### B.    DISCRIMINATION RESULTING IN A CONSTRUCTIVE DISCHARGE

As alleged, Plaintiff cannot plausibly advance a constructive discharge claim based on discrimination under Title VII. Within the Tenth Circuit, constructive discharge occurs when "an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005). While an employer's actions may make an employee unhappy, "not every unhappy employee has an actionable claim of constructive discharge." *Id.* at 1282. "The conditions of employment must be ***objectively*** intolerable; the plaintiff's subjective views of the situation are irrelevant." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015) (quoting *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 534 (10th Cir. 1998) (emphasis added). Plaintiff's allegations do not establish a viable claim of constructive discharge.

Plaintiff has failed to allege objectively intolerable working conditions. He merely makes a vague, conclusory statement that he "was treated dismissively and less favorably by his white female colleagues" and that his opportunity to go to Arezzo was "opposed by one or more of [his] white female colleagues". [Doc. 1 at ¶18 and 24]. He never states

which colleagues opposed it, what form the opposition took, or even what motivated the opposition. Simply stating the race and gender of the colleagues who did not agree with an employment decision involving him does not establish an illegal discriminatory act. *See Bennett*, 792 F.3d at 1269. He then alleges that a Title IX complaint was filed against him, and he was placed on administrative leave. As a result of this and the "elimination of his profile from the OU website,"[2] the Plaintiff asserts that he was subjected to conditions so intolerable that he felt compelled to resign. While being placed on administrative leave could conceivably be considered an adverse employment action in some circumstances, it is far from sufficient to establish constructive discharge. As the Tenth Circuit held in *Tran v. Trustees of State Colleges in Colorado*, "a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." 355 F.3d 1263, 1271 (10th Cir. 2004). It is not objectively reasonable that Plaintiff felt compelled to resign within a month of being placed on administrative leave pending an investigation of his own alleged misconduct.[3]

---

[2] According to the Complaint, Plaintiff resigned before the removal of his profile from the website, so that alleged incident could not have contributed to his decision. *See* [Doc. 1 at ¶ 32]. He also resigned prior to the completion of the Title IX investigation, so the University's alleged decision not to reinstate him *after* the findings also cannot be considered part of the "intolerable conditions" compelling his resignation.

[3] Plaintiff's decision to resign prior to the completion of the investigation is also damaging to his claim if it is viewed as a protest resignation. *See Hill v. Phillips 66 Company*, No. 14-CV-102-JED-FHM, 2016 WL 3910272 at *16 (N.D. Okla. 2016) (a plaintiff who abandoned her employment prior to the completion of an investigation into her discrimination complaint could not establish constructive discharge).

Plaintiff's allegation that he resigned in January with an effective date six months later further undermines the proposition that conditions were so intolerable that he felt compelled to leave. Courts within the Tenth Circuit have noted that advance notice belies intolerability. In *Duckett v. Water District One of Johnson County*, the court noted, among the many reasons the plaintiff's constructive discharge claim was not viable, the fact that he gave four weeks' notice. No. 07-2376-JAR, 2009 WL 10708342 at *17 (D. Kan. 2009). The court stated: "The fact that plaintiff was willing to remain employed by WaterOne for an additional month cuts against his claim that his working conditions were intolerable." *Id.* In *Alvariza v. Home Depot*, a plaintiff's constructive discharge claim failed in part because she gave two weeks' notice. No. 05-CV-02590-EWN-BNB, 2007 WL 794187 at *9 n. 2 (D. Colo. 2007). Given these analyses, Plaintiff's six-month notice most assuredly diminishes any claim that his conditions were intolerable.

## CONCLUSION

The University respectfully requests the Court dismiss Plaintiff's Complaint [Doc. 1] and grant any and all additional relief the Court deems just and equitable.

9

Respectfully submitted,

*/s/Tina S. Ikpa*
M. Daniel Weitman, OBA # 17412
Tina S. Ikpa, OBA # 32193
C.B. Moore, OBA # 31653
Office of Legal Counsel
UNIVERSITY OF OKLAHOMA
660 Parrington Oval, Suite 213
Norman, Oklahoma 73019
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
dan.weitman@ou.edu
tsikpa@ou.edu
cbmoore@ou.edu
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 23rd day of January 2026, a copy of the foregoing was filed with the Court using the ECF system, which sent electronic notification to all counsel of record.

*/s/Tina S. Ikpa*
Tina S. Ikpa